IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| DEBORAH ELWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV507 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Deborah Elwood ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.  PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income Benefits on December 14, 2010, alleging a disability onset date of November 9, 2010. (Tr. at 264-76.)[1] Her applications were denied initially (Tr. at 107-40) and upon reconsideration (Tr. at 141-74). Thereafter, Plaintiff requested an administrative hearing de

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

novo before an Administrative Law Judge ("ALJ"). (Tr. at 212-14.) On December 4, 2012, Plaintiff attended the subsequent hearing, along with her attorney and an impartial vocational expert, who testified by telephone. (Tr. at 23.)

Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (Tr. at 36.) The Appeals Council granted Plaintiff's request for review of the decision, and made various findings modifying the ALJ's decision. However, in a decision dated April 21, 2014, the Appeals Council ultimately determined that Plaintiff was not disabled within the meaning of the Act. (Tr. at 1-9.)

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted).

"If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC,

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: hashimoto thyroiditis with history of diffuse goiter, degenerative disc disease of the lumbar spine with annular tear and radiculitis of the lower extremities, cervicalgia, obesity, hypertension, depression, and somatization. (Tr. at 4, 6, 25.) The ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 4, 6, 26.) On review, the Appeals Council adopted these findings. The ALJ assessed Plaintiff's RFC and determined that she could perform sedentary work

with myriad mental, postural, environmental limitations. In pertinent part, the ALJ found that Plaintiff could "stand and/or walk no more than 2 hours in an 8-hour workday; or sit no more than 2 hours in an 8-hour workday, except she can stand no more than 30 minutes at one time and she can sit no more than 60 minutes at a time." (Tr. at 29.) The Appeals Council disagreed with this portion of the ALJ's finding, as it "account[ed] for less than 8 hours total in an 8-hour workday." (Tr. at 5.) After a review of the entire record, the Council instead found that Plaintiff could "stand and/or walk no more than 2 hours in an 8-hour workday; and sit no more than 6 hours in an 8-hour workday, except that [she] can stand no more than 30 minutes at a time and sit no more than 60 minutes at a time." (Tr. at 5, 6.)

The Appeals Council further determined that the revised RFC determination failed to alter the ALJ's previous findings at steps four and five of the sequential analysis. In particular, the Council found at step four that Plaintiff could not return to any of her past relevant work. (Tr. at 5-6, 34.) Based on the vocational expert's testimony, the Council then determined at step five, that, given Plaintiff's age, education, work experience, and RFC, she could perform other jobs available in the national economy. (Tr. at 5, 7, 35-36.) Therefore, the Appeals Council concurred with the ALJ's ultimate conclusion that Plaintiff was not disabled under the Act. (Tr. at 7, 36.)

Plaintiff now argues that the ALJ and/or the Appeals Council erred in two respects. First, she contends that, at step three, neither decision-maker properly evaluated her back impairment under 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04A (hereinafter "Listing 1.04A"). Second, she challenges the Appeals Council's modification of the RFC.

6

A.  Listing 1.04A

Plaintiff first claims that the ALJ did not properly evaluate her back impairment against Listing 1.04(A). A plaintiff meets Listing 1.04(A) only if she meets three requirements. She must first show that she suffers from a spinal disorder, such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [or] vertebral fracture." 20 C.F.R. Part 404, Subpt. P, Appendix I, § 1.04. Second, she must demonstrate that the above spinal condition results in "compromise of a nerve root (including the cauda equina) or the spinal cord." Id. Lastly, she must show:

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

Id.

In the present case, Plaintiff's documented degenerative disc disease clearly met the first of these requirements. However, the ALJ further determined that this condition

> has not resulted in compromise of a nerve root (including cauda equin[a]) or the spinal cord. In addition, there is not sufficient evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitations of range of motion of the spine, or motor loss (atrophy associated muscle weakness, or muscle weakness) accompanied by sensory or reflex loss. Furthermore, a review of the claimant's medical imaging studies and treatment notes clearly reflects that the criteria of Listing 1.04 are unmet.

(Tr. at 27.)

Plaintiff now argues that, contrary to the ALJ's assertion, she met Listing 1.04A's requirements. Specifically, she recounts medical evidence to establish that, at various times,

7

she exhibited some of the symptoms required by Part A of the listing (Pl.'s Br. [Doc. #12] at 6-8). However, to meet a listing, a claimant's impairment "must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

Here, as Defendant correctly notes, Plaintiff provides no evidence that she met all of Listing 1.04A's requirements. Her treatment records fail to identify the existence of any nerve root compression or compromise of a nerve root or the spinal cord, let alone "establish a connection between Plaintiff's degenerative disc disease and any compromise of the spinal cord or nerve roots." (Def.'s Br. [Doc. #14] at 6-7.) In fact, in reading Plaintiff's March 2011 MRI, the radiologist specifically noted that Plaintiff's annular tear and protrusion did "not appear to significantly encroach upon the spinal canal or nerve roots." (Tr. at 570.)

The sole mention of nerve root or spinal cord damage in Plaintiff's treatment records is a reference to a 2008 electromyography, or EMG, study which demonstrated findings "consistent with a lesion of the S1 nerve root on the left." (Tr. at 591.) The ALJ specifically recounted this finding. (Tr. at 30.) However, in accordance with Acquiescence Ruling ("AR") 00-1(4) and Albright v. Comm'r of Soc. Sec., 174 F.3d 473 (4th Cir. 1999), he also gave great weight to the ALJ's findings from Plaintiff's previous hearing, held November 9, 2010, which took the 2008 EMG into account, yet concluded that Plaintiff failed to meet Listing 1.04A. (See Tr. at 94.) Significantly, Plaintiff did not challenge that finding on the appeal of that prior determination. See Elwood v. Colvin, No. 5:12-CV-544-D, 2014 WL 580246 (E.D.N.C. Feb. 12, 2014) (unpublished). Moreover, the 2008 EMG results predate

Plaintiff's alleged onset date in the present case by three years, and Plaintiff provides no evidence that her suspected lesion still existed during the relevant time period, let alone met the nerve root compromise requirements of Listing 1.04A.

In light of the above evidence, the Appeals Council declined to alter the ALJ's step three findings upon review (Tr. at 6), and Plaintiff's present reliance on Radford v. Colvin, 734 F.3d 288 (4th Cir. 2013) does nothing to alter the supportability of this result. In Radford, the ALJ "appeared to totally – and without explanation – reject the opinions of [the claimant's] treating physicians in favor of the state medical examiners," rendering a step three finding unsupported by substantial evidence and incapable of meaningful judicial review. 734 F.3d at 295-96. Here, as set out above, the ALJ examined the record as a whole and clearly set out the objective reasons that Plaintiff's back impairment failed to meet the requirements of Listing 1.04A. (Tr. at 27.) Accordingly, substantial evidence supports the ALJ's step three determination.

B.  RFC Modification

Plaintiff next presents a twofold challenge to the Appeals Council's modification of the sitting limits in her RFC from two hours to six hours. First, she contends that, because the ALJ's RFC did not account for a full, 8-hour workday, the ALJ should have determined that Plaintiff was disabled. Second, Plaintiff argues that the Appeals Council's modification of the RFC was not based on a preponderance of the evidence, as required by 20 C.F.R. § 404.979. Instead, she claims, the Council's "change in the RFC added 4 hours to her work day with absolutely no supporting evidence to justify the change." (Pl.'s Br. at 11.)

Defendant, in turn, provides the following three arguments as evidence that the Appeals Council's change "simply corrected a scrivener's error in the ALJ's opinion": (1) "the ALJ would have found Plaintiff disabled if he made a purposeful finding that Plaintiff could only work four hours a day;" (2) none of the RFCs presented to the vocational expert in hypothetical questions included a 2-hour sitting limitation; and (3) substantial evidence does not support a 4-hour workday RFC. (Def.'s Br. at 10-11.)

In considering these contentions, the Court notes that under the applicable regulatory scheme, the Appeals Council is permitted to review the evidence and "affirm, modify or reverse" an ALJ's decision based on the preponderance of the evidence. See 20 C.F.R. § 404.979, 416.1479. To the extent that the Appeals Council grants review and modifies the ALJ's decision, this Court reviews the Appeals Council's decision as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 106–07 (2000). In the present case, having reviewed the ALJ's and Appeals Council's decisions, along with the record as a whole, the Court finds that the Appeals Council's modification of the ALJ's RFC finding is based on the preponderance of the evidence in the record, and is supported by substantial evidence in the record.[4]

Plaintiff's allegation of error on the part of the Appeals Council is unpersuasive. Chiefly, Plaintiff contends that the Council improperly relied upon "the fact that the ALJ

---

[4] To the extent Plaintiff contends that the ALJ should have found her disabled once he concluded that she could only sit or stand for 4 hours, the Court notes that the Appeals Council has authority to modify or reverse an ALJ's determination, even if it is favorable to a claimant, and this Court reviews only the final decision of the Commissioner. Moreover, and in any event, it does not appear that the ALJ purposefully decided that Plaintiff could sit for no more than two hours a day, therefore preventing her performance of any full-time employment, given that the ALJ nevertheless took the time to include myriad additional postural, mental, and environmental limitations in Plaintiff's RFC, explain his basis for those limitations at length, and then author three more pages carefully explaining the basis for his finding that Plaintiff could perform several carefully identified full-time jobs.

asked a hypothetical question contemplating sitting up to 6 hours in a work day" in making the "assumption" that the ALJ meant to say six hours instead of two. (Pl.'s Br. at 11.) Because "[h]ypotheticals are meant to contemplate various scenarios[,] and an ALJ is not required to make the final RFC determination from any hypothetical," Plaintiff argues that this finding alone cannot form a basis for the Council's change in sitting limitations. (Id.) However, as Defendant correctly points out, none of the hypothetical questions to the vocational expert included a limitation to sitting for a total of two hours or less in an 8-hour day, as would have been the case if the ALJ was contemplating such a scenario. (Tr. at 31-79.) Moreover, as explained in both administrative decisions, the ALJ clearly relied on the expert's answer to a hypothetical question including a limitation to "sit no more than 6 hours in an 8-hour workday" in rendering his findings at steps four and five of the sequential analysis. (Tr. at 5, 34-36.) The ALJ also explained in the body of his decision, after discussing the medical evidence at great length, "that this evidence confirms the claimant is capable of performing sedentary work as long as provided the sit/stand restrictions noted in Finding #5," i.e., the RFC assessment in question. (Tr. at 31.) Had the ALJ meant to say two hours of sitting rather than six, such work would be precluded. In short, the preponderance of the evidence supports the Appeals Council's interpretation and modification of the two-hour sitting limitation in the RFC, and substantial evidence supports the RFC as ultimately formulated by the Appeals Council. See also Smalls v. Colvin, No. 9:12-CV-01784-RBH, 2013 WL 5410236 (D.S.C. Sept. 26, 2013) ("[T]he Appeals Council's modification of the ALJ"s finding that Plaintiff can stand and walk for six hours in an eight-hour workday is supported by substantial evidence. . . . [T]he Appeals Council's

11

modification is more consistent with the evidence in the record than the ALJ's initial finding. Thus, it is the Court's opinion that the modification is supported by substantial evidence.").

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 22nd day of July, 2015.

/s/ Joi Elizabeth Peake
United States Magistrate Judge